UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID BEAM,

                      Plaintiff,

v.                                                 5:16-CV-0147
                                                    (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OUIMETTE, GOLDSTEIN &                SCOTT GOLDSTEIN, ESQ.
ANDREWS, LLP
  Counsel for Plaintiff
100 Crystal Run Road, Ste. 112
Middletown, NY 10941

U.S. SOCIAL SECURITY ADMIN.           SIXTINA FERNANDEZ, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 21.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by David Beam ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 19, 20.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied in part and granted in part, in the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g), and Defendant's motion is granted in part and denied in part.

**I.    RELEVANT BACKGROUND**

    **A.    Factual Background**

Plaintiff was born in 1978. (T. 104.) He completed the 9th grade. (T. 211.) Generally, Plaintiff's alleged disability consists of a back impairment and a learning impairment. (T. 104.) His alleged disability onset date is November 12, 2011. (T.104.) His date last insured is December 31, 2014. (T. 104.) He previously worked as a highway maintenance worker, concrete mixing truck driver, and box maker. (T. 22.)

    **B.    Procedural History**

On September 6, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 112.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 4, 2014 and on May 20, 2014 Plaintiff appeared before the ALJ, Robert Gonzalez. (T. 30-61, 62-102.) On July 18, 2014, ALJ Gonzalez issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 10-29.) On December 4, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

    **C.    The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T.15-24.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2014 and Plaintiff had not engaged in substantial gainful activity since November 12, 2011. (T. 15.) Second, the ALJ found that Plaintiff had the severe impairments of obesity, lumbar radiculopathy, failed back syndrome, lumbar facet syndrome, cervical spine mild neural foraminal narrowing, lumbar spine disc herniation, post-laminectomy syndrome, left shoulder pain, sciatica, depression, a mood disorder, and dyslexia. (T. 15.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 16-17.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work; however, Plaintiff could occasionally stoop and crouch and could not reach overhead with the non-dominant, left upper extremity. (T. 17.) Further, the ALJ found that Plaintiff could never crawl, kneel, or climb ladders, ropes or scaffolds. (*Id.*) The ALJ found that Plaintiff could understand, remember, and carry out simple routine repetitive work commensurate with unskilled work. (*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 23-24.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes essentially four separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues he meets or equals Listing 1.04. (Dkt. No. 19 at 16, 20 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in his

3

RFC determination because the ALJ failed to properly weigh the opinion evidence of Plaintiff's treating provider, the record failed to show that Plaintiff could sit for six hours per day, and the record failed to show that Plaintiff could occasionally stoop. (*Id.* at 18-20.) Third, Plaintiff argues that the ALJ erred in his credibility determination. (*Id.* at 18-19.) Fourth, and lastly, Plaintiff argues that the ALJ erred in his step five determination. (*Id.* at 17-18.)

### B.  Defendant's Arguments

In response, Defendant makes four arguments. First, Defendant argues the ALJ correctly found that Plaintiff's impairment did not meet or equal a Listing. (Dkt. No. 20 at 5-8 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ's RFC determination was supported by substantial evidence. (*Id.* at 8-13.) Third, Defendant argues the ALJ correctly found that Plaintiff's subjective complaints of pain were not wholly credible. (*Id.* at 13-15.) Fourth, and lastly, Defendant argues that the ALJ's step five determination was supported by substantial evidence. (*Id.* at 16.)

## III.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard

to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.   ANALYSIS**

    **A.   The ALJ's Step Three Determination**

Plaintiff claims that he is entitled to presumptive disability under the criteria of section 1.04 of the Listing of Impairments set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. (Dkt. No. 19 at 16, 20 [Pl.'s Mem. of Law].) Plaintiff has the burden of proof at step three of the sequential analysis to show that his impairments meet or medically equal a listed impairment. *See Bowen v. Yuckert*, 482 U.S. 137 (187). Additionally, Plaintiff must show that he met all of the specified criteria of the listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (An impairment that manifests only some of the listing criteria, no matter how severely, does not qualify).

Listing 1.04 requires the following:

> A disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease,

6

> facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
> With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

See 20 C.F.R., Part 404, Subpart P, Appendix 1.

Here, the ALJ concluded that Plaintiff's back impairments did not meet or equal Listing 1.04. (T. 16.) The ALJ reasoned that although Plaintiff suffered from back impairments, the record did not contain the Listing's required evidentiary criteria. (Id.) Later in his decision, the ALJ specifically concluded that straight leg raises ("SLR") were found to be positive only on the left side and muscle strength and reflexes were intact, which did not fulfill the criteria of Listing 1.04. (T. 20.)

Plaintiff argues that he meets or equals Listing 1.04. (Dkt. No. 19 at 16, 20 [Pl.'s Mem. of Law].) Plaintiff further argues that the ALJ's step three determination was not supported by substantial evidence because the ALJ failed to sufficiently explain why Plaintiff did not meet or equal Listing 1.04. (Id. at 20.)

Here, the ALJ provided sufficient rationale to support his step three determination. The ALJ specifically noted that he considered Listing 1.04 and cited to

evidence in the record which he concluded did not support a finding that Plaintiff's back impairments satisfied the necessary criteria of that Listing. (T. 16, 20.)

Even if the ALJ failed to provide an express rational, remand would not be automatic, so long as his conclusion was supported by substantial evidence. *See Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) ("Unfortunately, the ALJ's otherwise thorough opinion failed to set forth a specific rationale in support of the foregoing conclusion. Nonetheless, the absence of an express rationale does not prevent us from upholding the ALJ's determination regarding appellant's claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence.") Therefore, there was sufficient analysis by the ALJ and further, the ALJ's step three determination was supported by substantial evidence in the record.

Indeed, as stated by Defendant, Plaintiff failed to meet the threshold criteria of Listing 1.04. (Dkt. No. 20 at 6 [Def.'s Mem. of Law].) Plaintiff's back impairment did not result in compromise of a nerve root or of the spinal cord. The record indicated that there was no evidence of nerve root compression at required by the Listing. 20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 1.04A. In a letter dated March 6, 2013, neurosurgeon Jeffrey Degen, M.D., indicated that he reviewed Plaintiff's 2013 MRI and it contained no evidence of nerve root compression. (T. 554.) Further, the record did not indicate that Plaintiff suffered from spinal arachnoiditis. 20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 1.04B. And lastly, the record failed to indicate that

Plaintiff's impairment resulted in an inability to ambulate effectively[1].  *Id.* at Listing 1.04C.

It is recommended that the ALJ's step three determination, that Plaintiff's back impairment did not meet or equal Listing 1.04, be upheld.  Here, the ALJ provided ample reasoning to support his conclusion.  In addition, Plaintiff failed to provide evidence in the record to support his contention, and indeed the record did not contain evidence that Plaintiff met all the necessary Listing criteria.

---

[1] The Listing provides the following for guidance regarding the criteria that Plaintiff must have an "inability to ambulate effectively":

> (1) Definition: Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.00B2b(1)-(2).

## B.    The ALJ's RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

Here, the ALJ found, in relevant part, that Plaintiff could perform sedentary work; however, he could occasionally stoop and crouch, could not reach overhead with his non-dominant hand, and could never crawl, kneel or climb.  (T. 17.)

Plaintiff argues that the ALJ's physical RFC assessment was not supported by substantial evidence.  Specifically, Plaintiff argues that substantial evidence did not support the ALJ's conclusion that Plaintiff could sit six hours in an eight-hour workday, as required by sedentary work. (Dkt. No. 19 at 18 [Pl.'s Mem. of Law].)  Plaintiff also argues that the ALJ's conclusion that Plaintiff could occasionally stoop was not supported by substantial evidence in the record.  (*Id.* at 19.)

Sedentary work requires that a plaintiff sit for "generally [a] total [of] about 6 hours of an 8-hour workday."  SSR 96-9P (S.S.A. July 2, 1996).  The record contains various medical opinions regarding Plaintiff's ability to sit.  On December 7, 2012, consultative examiner Charlene Andrews-Watson, M.D., examined Plaintiff and opined that he had "moderate restrictions for prolonged sitting."  (T. 473.)  On November 5, 2013, Plaintiff's treating provider, Neal Dunkleman, M.D., completed a Medical Source Statement, and opined that Plaintiff could sit for 20 minutes at a time for a total of three hours in an eight hour workday.  (T. 558.)  Dr. Dunkleman also completed numerous "Doctor's Progress Report" forms in connection with Plaintiff's worker's compensation case.  Therein he checked a box indicating that Plaintiff could return to work with a limitation in sitting; however, he did not define the limitation.  (T. 586, 589, 593, 596,

10

599, 602, 605, 608, 615, 676, 680, 684, 692.)  On March 19, 2014, consultative examiner Julia Kaci, M.D., examined Plaintiff and opined that he had "moderate limitations to sitting."  (T. 668.)  Dr. Kaci contemporaneously completed a Medical Source Statement and opined therein that Plaintiff could sit for 20 minutes at a time for a total of two hours in an eight hour workday.  (T. 670.)

In formulating his RFC determination, the ALJ afforded Dr. Dunkleman's 2013 opinion "very little weight."  (T. 19.)  He reasoned that the opinion was "poorly supported" by his own clinical evaluations and the doctor's other opinions which "appeared to place [Plaintiff] at a sedentary exertional level of work."  (*Id.*)  The ALJ afforded Dr. Dunkleman's opinions, as express in his progress reports, "great weight." (T. 19.)  The ALJ reasoned that the opinions expressed therein were "very well supported by his evaluations."  (*Id.*)

As an initial matter, Plaintiff appears to argue that the ALJ erred, as a matter of law, in affording Dr. Dunkleman's opinions varying weights.  (Dkt. No. 19 at 20 [Pl.'s Mem. of Law].)  Plaintiff provides no support for this contention and indeed, the Second Circuit has held that although an "ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013).  Further, "it is not per se error for an ALJ to make the RFC determination absent a medical opinion ..., [and] remand is not necessary where the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity."  *Lewis v. Colvin*, No. 13-

CV-1072S, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x. 29, 34 (2d Cir. 2013)).

The "regulatory language provides ample flexibility for the ALJ to consider a broad array of evidence as medical opinions." *Sickles v. Colvin*, No. 12-CV-774, 2014 WL 795978, at *4 (N.D.N.Y. Feb. 27, 2014) (citation omitted). Plaintiff's testimony and the treatment notes may constitute "relevant evidence [that] a reasonable mind might accept as adequate to support" the RFC as determined by an ALJ. *Johnson v. Colvin*, No. 15-3483-CV, 2016 WL 5539890, at *2 (2d Cir. Sept. 29, 2016) (quoting Richardson, 402 U.S. at 401); *see also Scouten v. Colvin*, No. 15-CV-76S, 2016 WL 2640350, at *4 (W.D.N.Y. May 10, 2016) ("[t]here is no error where ... an ALJ bases his RFC on Plaintiff's own testimony" together with relevant medical evidence). Here, however, the record did not contain sufficient evidence to support the ALJ's conclusion that Plaintiff could sit per the requirements of sedentary work.

The overall medical evidence in the record indicates that Plaintiff had greater restrictions in his ability to sit than accounted for in the ALJ's RFC determination. Further, the ALJ's decision failed to provide sufficient analysis to support his conclusion that Dr. Dunkleman's check the box limitation on "sitting" supported a determination that Plaintiff could sit for six hours in an eight hour workday.

To be sure, some courts have held that a consultative examiner's opinion, that a plaintiff has a "moderate" limitation in prolonged sitting, would not necessarily lead to the automatic conclusion that the plaintiff is excluded from performing the exertional demands of sedentary work. *See Harrington v. Colvin*, No. 14-CV-6044P, 2015 WL 790756, at *14-15 (W.D.N.Y. Feb. 25, 2015) (citing *Carroll v. Colvin*, 2014 WL 2945797,

12

*4 (W.D.N.Y.2014) ("several courts have upheld an ALJ's decision that the claimant could perform light or sedentary work even when there is evidence that the claimant had moderate difficulties in prolonged sitting or standing").

In the case before us, unlike the cases outlined above, the term moderate was defined by Dr. Kaci. After opining that Plaintiff had "moderate" limitations to sitting, Dr. Kaci provided concrete time parameters in which Plaintiff could sit during a workday. (T. 670.) Dr. Dunkleman also clarified his otherwise vague limitations regarding Plaintiff's ability to sit in his medical source statement. (T. 558.) The ALJ rejected the source's specific limitations in favor of their broader limitations reasoning that the specific limitations were based on Plaintiff's subjective complaints. (T. 19.) To be sure, ALJ may provide less weight to a doctor's opinion because it was based largely upon the subjective statements of a plaintiff, whom the ALJ had reasonably found to be less than fully credible. *Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012). However, the overall medical evidence indicates that Plaintiff had some degree of limitation in his ability to sit and therefore, the ALJ's determination that Plaintiff could perform sedentary work was not supported by substantial evidence.

Further, the ALJ's analysis of the opinion evidence is insufficient. In support of affording lesser weight to Dr. Dunkleman's 2013 statement, the ALJ reasoned that the statement was not supported by the doctor's own clinical notes. (T. 19.) Although the ALJ provided a summary of Dr. Dunkleman's treatment notations, the ALJ did not provide an adequate explanation of any inconsistencies or documentation of less restrictive findings to support his conclusion. In other words, it is not clear from the ALJ's determination what, or how, Dr. Dunkleman's observations did not support his

2013 opinion.  The ALJ stated that Dr. Dunkleman's "other opinions . . . appeared to place [Plaintiff] at a sedentary exertional level of work."  (T. 19.)  It is unclear from the ALJ's decision how Dr. Dunkleman's "progress reports" indicating Plaintiff could return to work with limitations in "sitting" equate to the ability to perform the exertional requirements of sedentary work as defined by the Social Security Administration.  The ALJ also afforded Dr. Kaci's specific opinion lesser weight reasoning that it was not supported by Dr. Dunkleman's opinion.  (T. 20.)  However, Dr. Kaci and Dr. Dunkleman both opined that Plaintiff had limitations in sitting and both specifically opined that Plaintiff could sit for twenty minutes at a time and for a total of two, or three, hours in a workday.  (T. 558, 670.)  Therefore, remand is recommended for a proper evaluation of the medical evidence regarding Plaintiff's ability to sit in an eight hour workday.

In addition Plaintiff argues the ALJ's RFC determination failed to account for all of Plaintiff's non-exertional limitations.  Plaintiff argues that the ALJ erroneously concluded that Plaintiff could occasionally stoop because the medical evidence indicated that Plaintiff could not stoop.  (Dkt. No. 19 at 19 [Pl.'s Mem. of Law].)  Dr. Dunkleman opined that Plaintiff could never "bend/stoop."  (T. 559.)  Dr. Kaci opined that Plaintiff could never stoop.  (T. 672.)  A complete inability to stoop would "significantly erode the unskilled sedentary occupational base."  SSR 96-9P (S.S.A. July 2, 1996).  The ALJ did not discuss Plaintiff's ability to stoop in his decision.  (T. 17-22.)  To be sure, "[a]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983)

14

(internal quotation marks omitted)).  However, because an inability to stoop would have an impact on Plaintiff's ability to perform sedentary work, and because the medical sources in the record opined that Plaintiff had a complete inability to stoop, the ALJ should have provided a discussion as to how he reached the determination that Plaintiff could "occasionally" stoop.

Plaintiff argues that the ALJ's RFC failed to include limitations regarding Plaintiff's "dexterity" based on Dr. Kaci's opinion.  (Dkt. No. 19 at 19 [Pl.'s Mem. of Law].)  However, the ALJ determined that Plaintiff could not reach overhead with his non-dominant left upper extremity.  (T. 17.)  Contrary to Plaintiff's contention, the ALJ's reaching limitations is consistent with Dr. Kaci's opinion.

In sum, the ALJ's RFC determination is not supported by substantial evidence and remand is recommended.  In particular, the overall medical evidence in the record provided greater limitations regarding Plaintiff's ability sit than accounted for in the RFC determination.  Further, it is unclear from the ALJ's decision how he reached the conclusion that Plaintiff was able to occasionally stoop.

### C.     The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992)).  However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23,

27 (2d Cir. 1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. § 404.1529. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at § 404.1529(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or has taken to relieve his pain or other symptoms; (5) other treatment the plaintiff receives or has received to relieve his pain or other symptoms; (6) any measures that the plaintiff takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Plaintiff essentially argues that the ALJ erred in his credibility analysis because the ALJ mischaracterized the record concerning Plaintiff's activities of daily living and overemphasized Plaintiff's abilities. (Dkt. No. 19 at 18-19 [Pl.'s Mem. of Law].) Here, a

review of the ALJ's credibility determination indicated that the ALJ properly adhered to the Regulation in making his determination. (T. 21-22.) However, because remand is recommended for a proper RFC analysis and determination, it would be prudent to conduct a new credibility analysis as well.

### D.    The ALJ's Step Five Determination

Because remand is recommended for a proper RFC analysis and determination, remand is also recommended for a new analysis at step five.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED in PART and DENIED in PART**, and the Commissioner's determination be **GRANTED in PART and DENIED in PART**, and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:     March 28, 2017

William B. Mitchell Carter
U.S. Magistrate Judge